JUAN ORTIZ ET UX., ETC., Plaintiffs and Appellees, v. PUERTO RICO TRANSPORTATION AUTHORITY and GREAT AMERICAN INDEMNITY COMPANY, Defendants and Appellants.

No. 11977. Submitted November 12, 1957.—Decided March 28, 1958.

R. *Rivera Zayas*, G. *Rivera Cestero*, *Milton F. Rúa* and *A. Segurola de Diego* for appellants. *José A. Suro* and *Antonio J. Amadeo* for appellees.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On March 30, 1955, about 12:40 p.m., José Luis Ortiz Tapia, a young boy 16-½ years of age, was run over by a Transportation Authority bus. The accident occurred when Ortiz tried to cross Ponce de León Avenue at Stop 8, from north to south, while the traffic of motor vehicles was moving in one single direction from west to east. When the accident occurred the bus was traveling on the third lane, counting from north to south, while the first two lanes were occupied by vehicles traveling toward Santurce.

José Luis and his parents sued the Transportation Authority and its insurer, Great American Indemnity Company, for damages suffered as a result of the accident. After a trial on the merits the Superior Court rendered judgment sustaining the complaint and awarding compensation for $8,000 to

José Luis and $800 to his parents, and the costs. From that judgment the defendants took the present appeal.

As to the way in which the accident happened, the lower court made the following findings of fact:

"On March 30, 1955, about 12:30 p.m., José Luis tried to cross Ponce de León Avenue at Stop 8, from north to south, coming out from Muñoz Rivera Park. The road at that point has four lanes and the vehicles can travel only from west to east. Despite the fact that three parallel rows of motor vehicles were moving, José Luis tried to walk fast across the avenue because he was hungry and was in a hurry to take the bus, which was coming slowly because it was going to stop within a few feet at the bus stop. The two automobiles on the first and second lanes, counting from north to south, stopped in time to avoid injuring the plaintiff, but the bus in question which was coming behind on the third lane hit José Luis with the left front side.

"Delgado did not see José Luis before the accident, from which we draw the inference that at that moment Delgado was driving absent-mindedly and looking to the right-hand side of the avenue.

"  .        .        .        .        .        .        .        .

"The chauffeur Delgado had the last clear chance to avert the accident, for if he had been operating the bus with reasonable diligence he could have easily seen José Luis in time as he crossed the road, as did the drivers of the automobiles on the first and second lanes. Delgado was in a better position than the other two operators to see José Luis because the bus seat is much higher than that of the automobiles, and hence the visibility is clearer. Although it is true that José Luis was negligent in crossing the avenue despite the moving traffic, the driver of the bus had the last clear chance to avoid the accident and, therefore, the proximate cause of the accident was the negligence of the chauffeur who was not sufficiently alert while operating a public vehicle on a main avenue of the capital of Puerto Rico. If he had been looking ahead and laterally (*Figueroa* v. *Picó, supra,* at 374) he would have seen José Luis at a reasonable distance to stop the bus in time."

The court made only one conclusion of law, to wit:

"In our opinion, the doctrine of last clear chance to avoid the accident is applicable to the facts of this case."

In the first two assignments of errors the appellants attack the conclusion of law and argue that the court erred in not concluding, on the contrary, "that the accident was caused through the sole and exclusive negligence of the minor, José Luis Ortiz Tapia, or at least through the contributory negligence of the said minor." We believe this point is controlling for the parties and we turn forthwith to consider it. To this end, it is convenient to make first a résumé of the evidence introduced by the parties as to the occurrence of the accident.

In this connection, the plaintiffs offered the testimony of the injured party, José Luis Ortiz Tapia, and of the driver of the bus, Juan Delgado Dones.

José Luis Ortiz testified that he was 18 years of age, that he lived in Cantera in Caserío Bartolomé las Casas, and that in the morning of March 30, 1955 he went to the Playa del Parque to collect some money due him. He remained there until noon. He was returning home at that hour, but as he tried to walk across the avenue in order to take the bus a black *car* was coming and stopped, "and I proceeded and the bus then hit me—as I reached the bus"; that when he passed in front of the black car, the bus was coming very close behind the black car; that when he dashed across the avenue there were three lines of cars moving from San Juan toward the bridge; that the first and second cars stopped when he darted across; that no other cars were coming either in front or behind these cars, and that there was hardly any traffic at that place at that moment; that he was anxious to arrive home early because he was hungry and was in a hurry, and for that reason he did not wait for the two automobiles to pass; that he was crossing in a hurry, walking very fast; that he passed in front of the

automobiles traveling on the first two lanes at the same time that the bus was coming close behind those automobiles.

Juan Delgado Dones testified that he is a mechanic and chauffeur, and that on March 30, 1955 he was operating a Transportation Authority bus; that the seat of the driver of the bus is situated on the front left side slightly higher than the other seats of the vehicle; that he can see from his seat over the top of the other automobiles; that that day he was covering the San Juan-Villa Palmeras route; that he had an accident at Stop 8-½ in front of Muñoz Rivera Park; that in the bus there were more than 10 seated passengers and 20 standees; that he left San Juan about 12:30 p.m; that he was traveling on the third lane from left to right alongside the park; that the fourth lane was occupied by parked vehicles; that he is well acquainted with the route and that place and knows that many people cross from the park to the opposite sidewalk, and that it is necessary to look ahead, driving slowly and keeping a lookout; that he had stopped at the previous stop and that when he proceeded someone rang the bell to alight at the next stop; that I "then let the bus go without accelerating in order to bring it to a stop, and all of a sudden I saw a shadow in front of the bus" about one foot away; that he saw the boy when the bus hit him, but that he did not see him in ample time to save him; that he did not see the boy when he went across the first and second lanes; that he was driving slowly and that if he had seen him about five feet away, he would have applied the brakes and stopped and the accident would not have occurred, but that he saw him when he was next to the bus; that the impact was produced with the front left side of the bus; that at that moment there were many cars on the road, the traffic was quite heavy; that he was looking ahead; that when he heard the impact he brought the bus to a stop and the boy fell in front of it; that if the brakes had not been in good condition he would have run over the boy; that although he

was going to stop at the bus stop on the right-hand side, he was looking straight ahead but not in the direction of the stop sign; that when the accident occurred the bus was traveling at 5 to 6 miles or kilometers because it was coming to a stop; that the accident occurred 10 or 15 feet before the stop; when the accident occurred his foot was on the brake and he simply had to press it; the bus stopped instantly within a distance of about four feet. Upon cross-examination, he testified that he was prescribed glasses for reading but not for work because he can see well; that he recalls seeing "a bulk, the blow, and I immediately applied the brakes"; that he did not see the boy before the accident.

The defendants introduced the following witnesses:

Domingo Olivieri, who testified that on March 30, 1955, he was driving his automobile from San Juan to Santurce along Stop 8. A bus was traveling slowly on the right lane ahead of the witness, but that the witness overtook it. A boy came out running from Muñoz Rivera Park and passed in front of his car; the car in front of the witness put on the brakes, so did the witness, and then he heard the blow when the bus knocked him; that it all happened rapidly; that at that time there was much traffic at that place.

Carmelo Hernández Tirado testified that he was a passenger on the bus; that at that moment there was much traffic and the bus was moving slowly, practically stopping; that he saw the boy dashing in front of other automobiles, one of which stopped; that the boy ran into the front left-hand side of the bus.

Felipe Pacheco Calderón: Was a passenger on the bus and was seated on one of the rear seats on the left-hand side. He saw the boy running as he came out of the park across the road in front of approaching cars; that he kept running and ran into the left front side of the bus; the bus stopped immediately; the bus was going slowly at about 10 or 15 miles per hour; that the witness has a defect in

his right eye, but that he can see well with his left eye and saw the boy running "wildly."

Adolfo Colón Dones testified that he was seated on the third seat on the left-hand side of the bus; that he saw the boy running across the street in front of the moving automobiles; the automobiles put on the brakes, the boy passed, and then ran into the left-hand side of the bus, the driver's side; that the bus was traveling at 5 to 10 miles per hour and was within 30 feet of the stop; that it all happened rapidly.

Regarding "the last clear chance" doctrine, we have said: "This 'doctrine presupposes a perilous situation created or existing through the negligence of both the plaintiff and the defendant, but assumes that there was a time after such negligence had occurred when the defendant could, and the plaintiff could not, by the use of means available, avoid the accident. It is not applicable if the emergency is so sudden that there is no time to avoid the collision, for the defendant is not required to act instantaneously.' *Dean v. Century Motors*, 154 F. (2) 201, 202 (C.C.A., D.C., 1946); *Capital Transit Company v. Grimes*, 164 F. (2) 718 (C.C.A., D.C., 1947); *Miranda v. Porto Rico Ry., Lt. & P. Co.*, 42 P.R.R. 694; *Ayala v. Matías*, 54 P.R.R. 331; *E. Solé & Co. v. American Railroad Co.*, 61 P.R.R. 727, 738; Annotation, 92 A.L.R. 47." *Heirs of Ortiz v. Ramírez*, 68 P.R.R. 462, 469.

In order to apply the foregoing doctrine to the facts of this case, the trial court was bound to conclude that the perilous position in which the plaintiff Ortiz was placed was created through his own negligence (on this last point we have no doubt), and also through the negligence of the driver of the bus. In order to arrive at this conclusion, the court draws "the inference that at that moment [the moment of the accident] Delgado [the driver of the bus] was driving absent-mindedly and looking to the right-hand side of the avenue." The evidence does not lend support to

the inference of the alleged absent-mindedness and negligence of the driver of the bus. The evidence does reveal that the bus was going slowly because it was approaching the place of its stop. The driver was looking straight ahead and, although as a general rule and under certain circumstances it is the duty of the driver to keep a lookout not only straight ahead but also laterally, in this specific case it was his duty to look particularly to the lateral right-hand side where he was going to bring the vehicle to a stop. This does not exempt him from seeing anything within his peripheral or lateral visibility, but considering the attendant circumstances we can not agree that the failure to see Ortiz when he darted across the avenue, in front of other moving vehicles amidst heavy traffic, constitutes lack of lookout or negligence. *Cf. Figueroa* v. *Picó*, 69 P.R.R. 372. The hurry to take the bus which was approaching the stop led Ortiz to dash out negligently across an avenue having three lines of moving vehicles. The driver of the bus could not anticipate that in front of the other two lines of automobiles on his left-hand side a person was going to expose himself to the peril which meant crossing Ponce de León Avenue at that hour and at that place. His dashing into the left-hand side of the bus was sudden and unexpected, and the driver merely did what any other person in his place would have prudently done, namely, to apply the brakes immediately to bring the vehicle to a stop. He had no time to avoid the accident and, therefore, he can not be held liable on the basis of "the last clear chance" theory, particularly since he was not guilty of negligence. *Matos* v. *Pabón*, 63 P.R.R. 855.

The judgment will be reversed and another rendered instead dismissing the complaint.